## Burche Co., Appellant, *v.* General Electric Company.

Argued May 24, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Francis B. Haas, Jr.,* with him *Samuel A. Schreckengaust, Jr.,* and *McNees, Wallace & Nurick,* for appellant.

*John McI. Smith,* with him *Ernest S. Burch, James H. Stewart, Jr.,* and *Nauman, Smith, Shissler & Hall,* for appellee.

*Harry F. Stambaugh,* with him *Herbert B. Cohen,* Attorney General, for intervenor, appellee.

OPINION BY MR. JUSTICE ARNOLD, June 27, 1955:

This case arose on a declaratory judgment under a case stated. The Commonwealth of Pennsylvania was given leave to intervene as a party defendant. The court below pronounced judgment in favor of the defendant and the plaintiff appeals.

Burche Co. operates a retail department store in the City of Harrisburg. The General Electric Company, a foreign corporation duly authorized to transact business in Pennsylvania, manufactures a large variety

of electric fixtures and appliances under the brand and trade name of "General (GE) Electric." These commodities are widely advertised and are in open competition in Pennsylvania with those of the same general class manufactured by others. The General Electric Company has expended large sums of money in promoting and advertising these commodities both in Pennsylvania and throughout the United States. It expended for such advertising during the three year period from 1949 to 1951 an amount in excess of $6,000,000, thereby developing a valuable reputation and good will for such commodities and for the trade-mark under which they are produced and sold. General Electric engages in price regulation of its commodities by means of a minimum retail price agreement commonly known as "fair trade contracts," and it has entered into such agreements with other retailers doing business in Pennsylvania.

The plaintiff has been notified by the defendant of the existence of fair trade agreements with other retailers, and also of the stipulated minimum retail prices for the commodities established under these agreements. It has not entered into a fair trade agreement with the defendant, but admits it has wilfully, intentionally and knowingly advertised, offered for sale and sold these commodities at prices below the stipulated retail minimum.

The Act of 1935, P.L. 266, as amended by the Act of 1941, P.L. 128, 73 PS §7, provides, inter alia: "No contract relating to the sale or resale of a commodity which bears, or the label or content of which bears, or the vending equipment from which said commodity is sold to the consumer bears the trade-mark, brand or the name of the producer or owner of such commodity, and which is in fair and open competition with commodities of the same general class produced by others,

shall be deemed in violation of any law of the State of Pennsylvania by reason of any of the following provisions which may be contained in such contract: (a) That the buyer will not resell such commodity, except at the price stipulated by the vendor. (b) That the buyer of such commodity require upon his resale of such commodity that the purchaser from him agree that such purchaser will not in turn resell except at the price stipulated by the vendor of the buyer."

The plaintiff contends that this Act as applied to it is unconstitutional because it had not signed a minimum retail price maintenance agreement with the defendant. It must be conceded that generally such acts are held constitutional. See *Bristol-Myers Company v. Lit Brothers, Inc.* 336 Pa. 81, 6 A. 2d 843; *Lentheric, Inc. v. F. W. Woolworth Co.,* 338 Pa. 523, 13 A. 2d 12;[1] *Old Dearborn Distributing Company v. Seagram-Distillers Corporation,* 299 U. S. 183, cited in *Bristol-Myers Company v. Lit Brothers, Inc.* 336 Pa. 81, 6 A. 2d 843.[2] The Act is a valid exercise of the police power:

---

[1] In this case this Court affirmed a preliminary injunction restraining violation of the Pennsylvania Fair Trade Act, which it would not have done if any doubt had been entertained as to the constitutionality of the Act. As said by this Court in *Turco Paint & Varnish Company v. Kalodner,* 320 Pa. 421, 428, 184 A. 37, "The Act of 1923 was before this court in Com. v. Chambersburg Engineering Co., 287 Pa. 54; Com. v. J. G. Brill Co., 287 Pa. 59. While the constitutionality of that act. . . [was] not under attack in these cases, it is fair to assume that had there been any constitutional objections such as are here being considered, they would have been raised and the court would have passed on them."

[2] To the same effect are *Scovill Mfg. Co. v. Skaggs Pay Less Drug Stores* (Cal.), 275 P. 2d 619; *General Electric Co. v. Klein-on-the Square,* 129 N.Y.L.J. (1953); *Klein v. National Pressure Cooker Co.* (Del.), 64 A. 2d 529; *General Electric v. Packard Bamberger & Co., Inc.* (N.J.), 102 A. 2d 18; *Lionel Corp. v. Grayson-Robinson Stores, Inc.* (N.J.), 104 A. 2d 304; *General Electric Co. v. Masters, Inc.,* (N.Y.), 120 N.E. 2d 802; *Raxor Corp. v. Goody,* (N.Y.), 120

*Bristol-Myers Company v. Lit Brothers, Inc.,* supra, *Old Dearborn Distributing Company v. Seagram-Distillers Corporation,* supra. On the general subject see the case of *Nebbia v. New York,* 291 U. S. 502, and *Rohrer v. Milk Control Board,* 332 Pa. 257, 2 A. 2d 761.

Nor is this Act an unlawful delegation of legislative power. In fact, it is not a delegation of power at all: *Old Dearborn Distributing Company v. Seagram-Distillers Corporation,* 299 U. S. 183, in which that Court held constitutional the Illinois Fair Trade Act which required nonsigners to observe the price restriction. See also *Joseph Triner Corporation v. McNeil,* 363 Ill. 559, 2 N. E. 2d 929, and *Johnson & Johnson v. Weissbard* (N.J.), 191 A. 873, *Ely Lilly & Co. v. Saunders,* 216 N.C. 163, 4 S.E. 2d 528; *Weco Products Co. v. Reed Drug Co.* (Wis.), 274 N. W. 426; *General Electric Co. v. Masters, Inc.* (N.Y.), 120 N.E. 2d 802.

At the time of the passage of this Act in 1935, and its amendment in 1941, it was unconstitutional as applied to interstate commerce, being in conflict with the Sherman Anti-Trust Act: *Schwegmann Bros. v. Calvert Distillers Corp.,* 341 U. S. 384. In 1952 Congress enacted the so-called McGuire amendment to the Federal Trade Commission Act which reversed the doctrine declared in the Schwegmann case and removed from the prohibition of the Sherman Anti-Trust Act the nonsigner provisions of state fair trade acts. The Pennsylvania statute was clearly in force as to *intrastate* commerce since the Sherman Act applies only to interstate commerce. The passage of the McGuire Act left the Pennsylvania Act in force as to sales by nonsigners in *interstate* commerce. In *General Electric v.*

N.E. 2d 802. The great weight of authority is in accord with the conclusion that the Pennsylvania Act is constitutional.

*Packard Bamberger & Co., Inc.* (N.J.), 102 A. 2d 18, the Supreme Court of New Jersey held that after the enactment of the McGuire Act it was not necessary to reenact the Fair Trade Law of that state. In its opinion written by Mr. Justice BURLING the Court said: "The foregoing authorities do not reach the present question, namely, whether a state statute in order to have effect must be reenacted after the relaxation of the federal restriction against its operation with respect to interstate commerce. Under the circumstances of the state and federal legislation involved herein we are of the opinion that reenactment of the state statute is not necessary. There is respectable authority for this determination. It is stated that 'Where a state statute is declared unconstitutional or invalid because it is in conflict with federal legislation, the state statute is in effect merely unenforceable or suspended by the existence of the federal legislation.' I Sutherland, Statutory Construction (3rd ed., Horack, 1943), sec. 2027, p. 501; Field, The Effect of an Unconstitutional Statute (1935), p. 286 et seq. Consequently, continues Sutherland's work, 'the repeal of the federal statute reinstates or revives the state law without an express re-enactment by the state legislature,' and the same holds true where by express enactment Congress removes an obstacle to the operation of state legislation. I Sutherland, Statutory Construction, ubi supra, pp. 501-502. . ." The same result was had by the State of New York in *General Electric Company v. Masters, Inc.,* 307 N.Y. 229, 120 N.E. 2d 802, where the court stated: "In the instant cases, however, instead of having, by prior decision, limited the Feld-Crawford Act to local commerce, we have squarely held that the statute applies to nonsignatories in *interstate* commerce, Calamia v. Goldsmith Bros. supra. Although such application was later declared unconsti-

tutional in Schwegmann Bros. v. Calvert Distillers Corp., supra, passage of the McGuire Act in 1952 removed the final barrier to complete interstate application of the New York statute. Under such circumstances it has long been well established that the Constitution does not require a State statute to be re-enacted in order to be effective, Matter of Rahrer, 140 U. S. 545, . . ." See also *Sturges v. Crowninshield,* 17 U. S. 122.[3]

Judgment affirmed at the cost of the appellant.

---

[3] For general annotations on this subject see 19 A.L.R. 2d 1139.